**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

In re:                                                                  NOT FOR PUBLICATION

        26 BOWERY LLC and                                         Chapter 11
        2 BOWERY HOLDING LLC,                                     Case No. 22-10412 (MG) and
                                                                         22-10413 (MG)
                                                                       (Jointly Administered)

                                                        Debtors.
------------------------------------------------------------------------x

2 BOWERY HOLDING LLC,

                                               Plaintiff,               Adv. Pro. No. 23-01163 (MG)
v.

WILLIAM NG, "JOHN DOE," and "JANE DOE,"

                                               Defendants.
------------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING JUDGMENT**
**OF POSSESSION IN FAVOR OF DEBTOR-PLAINTIFF 2 BOWERY HOLDING LLC**

*A P P E A R A N C E S:*

RAVERT PLLC
*Special Litigation Counsel for Debtors and Debtor-Plaintiff*
16 Madison Square West, Floor 12, #269
New York, New York 10010
By:    Gary O. Ravert, Esq.

DE LOTTO & FAJARDO LLP
*Landlord Tenant Counsel for the Debtors and Debtor-Plaintiff*
4 Reeder Road
Rhinebeck, New York 12572
By:    Lauren De Lotto, Esq.

LAW OFFICES OF ROBERT S. LEWIS, P.C.
*Attorney for Defendant William Ng*
53 Burn Street
Nyack, New York 10960
By:    Robert S. Lewis, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the adversary complaint (the "Complaint," ECF Doc. #1) of 2 Bowery Holding LLC (the "Debtor" or "Plaintiff"), seeking (i) entry of final judgment of ejectment, with warrant of eviction, granting the Debtor immediate possession of units 1 and 2 (the "Apartments") at 2 Bowery, New York, NY 10013 (the "Property") and (ii) directing the immediate removal of defendants Willian Ng ("Defendant Ng"), "John Doe," and "Jane Doe" (collectively, the "Defendants") as well as any other occupants from the Apartments.[1] (Complaint ¶ 41.)

In support of the Complaint and the relief sought, the Debtor filed (i) a memorandum of law ("Supporting Memo," ECF Doc. # 14); (ii) the declaration of Brian Ryniker, member of financial advisory firm RK Consultants LLC and independent manager (the "Independent Manager") to the Debtor ("Ryniker Decl.," PX10 ECF Doc. # 14-10); and (iii) the declaration of Lauren De Lotto, member of law firm De Lotto & Fajardo LLP and landlord tenant counsel to the Debtor ("De Lotto Decl.," PX11 ECF Doc. # 14-11).

On October 4, 2023, Defendant Ng filed an answer (the "Answer," ECF Doc. # 7) to the Complaint, opposing the relief sought. On December 7, 2023, the Court entered a pretrial order (the "Pretrial Order," ECF Doc. # 15), which, among other things, amended the pleadings to "embrace" only the contentions of the parties set forth therein. (Pretrial Order at 3.) As reflected in the Pretrial Order, the Defendants did not submit any contentions or evidentiary support in

---

[1] Defendants "John Doe" and "Jane Doe" comprise any other persons that may be occupying the Apartments without the knowledge or consent of the Plaintiff and whose true names and genders are unknown to the Plaintiff. (Complaint ¶ 11.) The Court's ruling today applies equally to such Defendants, if any, as well as all other occupants residing at the Apartments.

2

opposition to the relief sought. (*See id.* §§ IV(B), VII, X.) Accordingly, the Court adopts the Plaintiff's contentions as set forth in the Pretrial Order for purposes of this ruling.

On December 13, 2023, the Court held an in-courtroom trial, addressing the two issues for the Court to resolve as set forth in the Pretrial Order:

1. Whether the Court should enter a judgment of possession allowing Plaintiff to take possession on January 15, 2024 based on the Defendants' agreement to vacate ("Agreement to Vacate," ECF Doc. # 13); and

2. Whether the Court should enter a judgment of possession allowing Plaintiff to take possession immediately based on the termination of the lease agreement (the "Lease," PX3 ECF Doc. # 14-3).

(Pretrial Order § V.) At trial, Plaintiff offered exhibits PX1 through PX11 into evidence, including the direct testimony of Brian Ryniker as set forth in the Ryniker Decl. (PX10) and the direct testimony of Lauren De Lotto as set forth in the De Lotto Decl. (PX11). The Defendants did not object and all exhibits were admitted into evidence. The Defendants also elected to not cross-examine either Mr. Ryniker or Ms. De Lotto. Both parties indicated to the Court that a trial on the matter was unnecessary and rested their case.

For the reasons stated below, the Court **GRANTS** a judgment of possession to the Debtor to take possession of the Apartments on January 15, 2024 (the "Deadline") and **DISMISSES** Defendant Ng's affirmative defenses. All occupants at the Apartments must vacate by the Deadline.

## I.    BACKGROUND

### A. The Debtor and the Commencement of the Chapter 11 Case

The Debtor, a New York limited liability company, serves as fee owner of the Property. (Supporting Memo ¶ 4.) The Property is a multi-family, mixed-use residential and commercial, 5-story building in Chinatown, Manhattan. (*Id.*) Specifically, the Property is comprised of (i) a single commercial unit that includes the basement and ground floors and (ii) a total of 8

3

residential Class "A" apartments on the remaining 4 floors. (*Id.* ¶ 5.) Each floor contains two residential apartment units. (*Id.*)

The Debtor entered into two loan agreements, dated April 26, 2019, borrowing a total of $8.6 million from two lenders, which were secured and cross-collateralized by certain notes, mortgages, security agreements, membership pledge agreements, and guaranties. (*Id.* ¶ 1.)

On March 31, 2023, the Debtor, along with 26 Bowery LLC ("26 Bowery"), executed amended and restated operating agreements and appointed RK Consultants LLC, by its member Brian Ryniker, as Independent Manager. (*Id.* ¶ 2.) The Independent Manager commenced the Debtor's voluntary Chapter 11 case along with the Chapter 11 case of 26 Bowery. (Ryniker Decl. ¶ 6; Pretrial Order at 1.) The Chapter 11 cases of both the Debtor and 26 Bowery are jointly administered. (Supporting Memo at 2 n.2.)

**B. Defendant William Ng and the Lease Agreement**

Defendant Ng is a New York State licensed acupuncturist, serving as a "healthcare acupuncturist" and practitioner of Chinese medicine. (*Id.* ¶ 6.) Since February 1, 2021, Defendant Ng has been the named tenant of record for the Apartments under the Lease, dated February 1, 2021, by and between the Debtor, as landlord, and Defendant Ng, as tenant. (*Id.* ¶ 8.) The Apartments comprise the entirety of the second floor of the Property. (*Id.*) Pursuant to the terms of the Lease, Defendant Ng is obligated to payment monthly rent in the amount of $1,000 per month for three years beginning on February 1, 2021 and ending on January 31, 2024. (*Id.* ¶ 9; Lease at 1.)

Under the terms of the Lease, the Apartments may only be used as "private apartment[s] to live in as a primary residence of the Tenant and for no other reason." (Lease § 1.) Additionally, the Lease further provides that the tenant is responsible for "all electric, gas,

4

telephone and other utility services used in the Apartment[s] and provide for them with the public utility company." (*Id.* § 6.) The Lease further indicates that "Tenant must . . . promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities." (*Id.* § 22.)

In the event of default under the Lease, the landlord shall give the tenant a notice of default with a prescribed time to cure. (*Id.* § 23.) Failure to timely comply may result in a cancellation of the Lease. (*Id.*) In the event the Lease is cancelled, the "Landlord may . . . [use] dispossess[ion], eviction or other lawsuit method[s] to take back the Apartment[s]." (*Id.*) The Lease notes that the "Landlord's . . . failure to enforce any term in this Lease is not a waiver of any of Landlord's rights." (*Id.* § 25.)

Additionally, the Lease includes mutual representations by the parties. (*See id.* § 28 ("Tenant has read [the] Lease . . . [and] [a]ll promises made by the Landlord are in this Lease").) Moreover, the Lease provides that modifications of the Lease may only be done via an "agreement in writing signed by and delivered to each party." (*Id.*) Finally, the Lease and its terms are "binding on Landlord and Tenant and their heirs, distributes, executors, administrators, successors and lawful assigns." (*Id.* § 35.)

**C. Alleged Defaults Under the Lease**

1. <u>Non-Residential Use of the Apartments</u>

The Debtor alleges that Defendant Ng is in default under the Lease for the "illegal and improper" operation of a business in the Apartments, which are reserved for residential use only as provided for under the Lease. (Supporting Memo ¶¶ 21, 44–45.) The Debtor indicates that Defendant Ng runs his acupuncture and Chinese medicine businesses from the Apartments. (*Id.* ¶ 7.) The Independent Manager inspected the Apartments and observed that the Apartments

5

were used solely for business purposes. (*Id.* ¶ 18.) Indeed, Defendant Ng admitted under oath that he, in fact, resides in Apartment 8 at the Property (the "Residence") with his wife and children. (*Id.*; Ryniker Decl. ¶ 21.)

2. Failure to Arrange for and Pay Utilities

The Debtor further alleges that Defendant Ng is in breach for his failure to open utility accounts in his own name and pay for any utility usage at the Apartments as required under the Lease.[2] (Supporting Memo ¶¶ 22, 46.) Defendant Ng admitted under oath that he did not register the utilities for the Apartments in his name and did not pay any associated utility charges. (*Id.* ¶ 46.)

**D. Notice to Cure and the Lease Termination Notice**

On July 31, 2023, counsel to the Independent Manager served a copy of a cure notice (the "Cure Notice," PX4 ECF Doc. # 14-4 at 4–7) on Defendant Ng in person and by first-class and certified mail at the addresses for the Apartments and the Residence. (*See* De Lotto Certificate of Service re Notice to Cure, PX4 ECF Doc. # 14-4 at 2–3.) The Cure Notice required Defendant Ng to cure the foregoing defaults and provide written notification and proof of cure by August 11, 2023 (the "Cure Deadline"). (Supporting Memo ¶¶ 21, 22.) To date, Defendant Ng has not cured any of the defaults by the Cure Deadline. (*Id.* ¶ 25.)

As a result, the Independent Manager served a notice of cancellation of lease (the "Termination Notice," PX5 ECF Doc. # 14-5 at 3–9) on Defendant Ng on August 16, 2023 via first-class and certified mail at the addresses for the Apartments and the Residence. (*See* De Lotto Certificate of Service re Notice of Cancellation of Lease, PX5 ECF Doc. # 14-5 at 2.) The

---

[2] Debtor notes that Defendant Ng openly admitted under oath that "he nor his wife pay rent for [the Residence] . . . nor for the [Apartments]" in addition to not paying for utility usage. (Supporting Memo ¶ 54.) However, Defendant Ng's failure to pay rent does not serve as a basis for the Debtor's requested relief.

6

Termination Notice required Defendant Ng to vacate and surrender possession of the Apartments to the Debtor on or before August 26, 2023.  (Supporting Memo ¶ 28.)  If Defendant Ng failed to do so, the Termination Notice provided that the Debtor would take legal action to, among other things, recover possession of the Apartments.  (*Id.*)  As of August 29, 2023, Defendant Ng did not vacate and surrender possession of the Apartments and failed to comply with the terms of the Termination Notice.  (*Id.* ¶ 29; *see also* Answer ¶ 11 (admitting that Defendant Ng remains in possession of the Apartments)).

### E.  The Adversary Proceeding

On August 29, 2023, the Debtor commenced this adversary proceeding, seeking a judgment of possession of the Apartments.  (*Id.* ¶ 30.)  On October 4, 2023, Defendant Ng filed an answer to the Complaint, denying the allegations, including the existence of any obligation to surrender the Apartments, that any alleged breaches give rise to such an obligation or serve as a basis for an ejectment proceeding.  (*Id.* ¶ 31; Answer ¶¶ 1–7.)  In the Answer, Defendant Ng asserted three affirmative defenses in response: (i) failure to state a cause of action upon which a claim for relief may be based; (ii) consent and ratification by the Debtor as well as the doctrines of laches, waiver, and equitable estoppel; and (iii) lack of *in personam* jurisdiction over Defendant Ng.  (Answer ¶¶ 8–15.)

On or about October 26, 2023, the Debtors "restrained" approximately $28,000.00 in funds (the "Restrained Funds") belonging to Defendant Ng's wife, Jenny Ng a/k/a Xuezhen Li, in connection with two money judgments entered against her in the main chapter 11 proceedings.  (Supporting Memo ¶ 32.)  Defendant Ng and his wife sought the release of the Restrained Funds to permit them to close on the purchase of a home in Macon, Georgia and agreed to vacate the Apartments and the Residence on or before January 15, 2024 in exchange.  (*Id.* ¶ 33.)  On

7

October 27, 2023, the Debtor agreed to release the Restrained Funds on the condition that Defendant Ng and his wife each execute the Agreement to Vacate under penalty of perjury. (*Id.* ¶ 34.) The Agreement to Vacate was ultimately executed and the Restrained Funds were released. (*See* Agreement to Vacate at 1; Supporting Memo ¶ 36.) Defendant Ng and his wife closed on the Macon, Georgia home on October 31, 2023. (Supporting Memo ¶ 36.)

On December 7, 2023, the Court entered the Pretrial Order, which sets forth the parties' contentions, the issues to be tried, the parties' evidentiary support, and the relief sought. (*See generally* Pretrial Order.) As noted, the Defendants did not submit any contentions or evidentiary support in opposition to the relief sought. (*See id.* §§ IV(B), VII, X.)

On December 13, 2023, the Court held an in-courtroom trial on the Complaint to address the two issues set forth in the Pretrial Order for the Court's consideration. As noted, the Court admitted exhibits PX1 through PX11 into evidence. The Defendants waived their rights to cross-examination of Mr. Ryniker and Ms. De Lotto and the parties rested their case.

## II.    LEGAL STANDARD

Generally, "ejectment actions are available to anyone claiming a superior right to possession." *Kosa v. Legg*, 816 N.Y.S.2d 840, 849 (N.Y. Sup. Ct. 2006); *see also Edwards v. All Star Recovery Corp.*, 63 N.Y.S.3d 305 (N.Y. Sup. Ct. 2017) ("Ejectment is an action which can be maintained against a party against whom one has a superior right to possession."). A "plaintiff . . . demonstrate[s] its prima facie entitlement to judgment as a matter of law on the cause of action for ejectment by establishing that (1) it is the owner of an estate in tangible real property, (2) with a present or immediate right to possession thereof, and (3) the defendant is in present possession of the estate." *Noamex v. Domsey Worldwide, Ltd.*, 144 N.Y.S.3d 77, 80 (N.Y. App. Div. 2021) (citations omitted).

8

Courts have recognized that leases that provide conditions upon breach for a landlord to exercise reserved rights to declare the lease terminated and reenter the premises generally require landlords to bring ejectment proceedings pursuant to Article 6 of the New York's Real Property Actions and Proceedings. *LLDP Realty Co., LLC v. AGHR Enterprises LLC*, 989 N.Y.S.2d 583, 585 (N.Y. Civ. Ct. 2014); *see Lamlon Dev. Corp. v. Owens*, 533 N.Y.S.2d 186, 188 (N.Y. Dist. Ct. 1988) ("If a leasehold can be terminated because the tenant's breach of a condition of the lease gives the landlord the option to declare the lease at an end, thereby exercising his right of forfeiture, a condition exists pursuant to which the landlord must enforce the forfeiture by reentry in an action for ejectment.")). Such proceedings are essentially common law ejectment actions. *LLDP Realty*, 989 N.Y.S.2d at 585; *see Alleyne v. Townsley*, 487 N.Y.S.2d 600, 600 (N.Y. App. Div. 1985) (noting that the "common-law action for ejectment still survives in New York and is more properly referred to as an action to recover possession of real property").

### III.  DISCUSSION

#### A. Debtor Established a Prima Facie Case for Ejectment

The Debtor has established a prima facie case for ejectment of Defendant Ng from the Apartments. It is undisputed that the Debtor is the fee owner of the Property and Defendant Ng remains in possession of the Apartments. (*See* Answer at 1–2 (not disputing that the Debtor is the fee owner of the Property); *id.* ¶ 11 (conceding that Defendant Ng is in possession of the Apartments).) Additionally, it is further undisputed that Defendant Ng was in breach under the Lease—none of which were timely cured—and that the Lease was properly terminated as of August 26, 2023. (*See* Pretrial Order § IV(B) (Defendants offering no contentions in opposition for the Court's consideration).) Generally, a tenant may be in default under the Lease for

9

"[f]ailure to comply with any other term or Rule in the Lease" and such default must be cured within 10 days of a notice to cure. (Lease § 23.)

Defendant Ng is clearly in breach under the Lease. First, Defendant Ng's use of the Apartments solely for his acupuncture and Chinese medicine practice violates the Lease's restriction that the Apartments are to be used for residential purposes only. (*See* Lease § 1 (providing that the Apartments are to be used only as "the primary residence of the Tenant and for no other reasons").) Such use also violates the express permitted legal use of the Apartments for "permanent residence purposes" only as provided for in the Property's Certificate of Occupancy ("C/O," PX2 ECF Doc. # 14-2) in further violation of the Lease, which requires a tenant to comply with governing laws, orders, and rules. (*See* C/O at 1; Lease § 22 ("Tenant must . . . promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities.").) As set forth in the C/O, only the cellar and the first floor of the Property are permitted to be used for commercial purposes. (C/O at 1; Supporting Memo ¶ 5.) Finally, Defendant Ng's failure to register utilities under his name and pay associated charges also constitutes a breach under the Lease, which explicitly provides that tenants are responsible for utilities used. (*See* Lease § 6 (providing that the tenant is responsible for "all electric, gas, telephone and other utility services used in the Apartment[s] and provide for them with the public utility company").)

It is undisputed that none of the foregoing defaults were timely cured as of the Cure Deadline established in the Cure Notice, which was served on Defendant Ng on July 31, 2023. It is further undisputed that, on August 16, 2023, the Debtor served the Termination Notice on Defendant Ng in accordance with the terms of the Lease, terminating the Lease effective as of August 26, 2023. As set forth in the Lease, if a tenant fails to timely cure, the landlord "may

10

cancel the Lease by giving Tenant a cancellation notice . . . [which] will state the date the Term will end . . . [but] no less than 10 days after the date of the notice." (*Id.* § 23.) On the cancellation date set forth in the notice, the "Term of [the] Lease shall end . . . [and] Tenant must leave the Apartment and give Landlord the keys on or before the cancellation date." (*Id.*) Additionally, in the event of cancellation, the landlord is entitled to "dispossess, evict[] or [use] other lawsuit method[s] to take back the Apartment and . . . to the extent permitted by law, enter the Apartment and remove Tenant and any person or property." (*Id.*)

Accordingly, the Lease was terminated as of August 26, 2023 and the Debtor possesses a superior right of possession to the Apartments. Given the foregoing, the Debtor has adequately established a prima facie case for the ejectment of the Defendants.

### B. Dismissal of the Affirmative Defenses is Warranted

Dismissal of Defendant Ng's affirmative defenses is also warranted. Generally, a defendant asserting an affirmative defense bears the burden of proof with respect to that defense. *Barton Group, Inc. v. NCR Corp.*, 796 F.Supp.2d 473, 498 (S.D.N.Y. 2011); *see Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) ("It is well-established that a defendant . . . bears the burden of proving its affirmative defense."); *Nat'l Commc'ns Ass'n Inc. v. AT&T Corp.*, 238 F.3d 124, 131 (2d Cir. 2001) ("The general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim.") (quoting *Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989)). Here, Defendant Ng has not offered any argument, facts, or evidence in support of the three affirmative defenses he has asserted. (*See* Pretrial Order §§ IV(B), VII, X (submitting no contentions, exhibits, or witnesses for the Court's consideration).) Therefore, Defendant Ng has not carried

11

his burden with respect to any of the affirmative defenses asserted and dismissal of such defenses is warranted.

## IV.    CONCLUSION

For the reasons stated below, the Court **GRANTS** a judgment of possession to the Debtor to take possession of the Apartments on January 15, 2024 and **DISMISSES** Defendant Ng's affirmative defenses. All occupants at the Apartments must vacate by the Deadline.

On or before 5:00 pm, December 21, 2023, Plaintiff's counsel shall submit the form of the judgment consistent with this Opinion that should be entered by the Court. If the Defendant fails to surrender possession on or before the Deadline, Plaintiff may apply to the Court for issuance of monetary or other sanctions.

**IT IS SO ORDERED.**

Dated:   December 18, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge